IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIANNA PUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-00790-SRW |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

### I.      Introduction

Plaintiff Adrianna Jalisa Pugh[2] commenced this action on October 16, 2019, pursuant to 41 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* Docs. 1, 15. Plaintiff filed her application on June 16, 2016, alleging that she became disabled on October 1, 2013. Doc. 17-4 at 31, R. 197. Plaintiff's application was denied at the administrative level on November 14, 2016. Doc. 17-5 at 2-4, R. 198-200. Plaintiff requested and received a hearing before an

---

[1] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim was filed at the administrative level. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

[2] As confirmed by the ALJ during plaintiff's administrative hearing, documents in the record making reference to Adrianna Jalisa Pugh Howard also refer to the plaintiff. *See* Doc. 17-3 at 46-47, R. 137-38.

Administrative Law Judge ("ALJ"). Docs. 17-3 at 38-76, R. 129-67; 17-5 at 10-11, R. 206-07. On February 8, 2019, ALJ Robin R. Palenske issued an adverse decision after holding a hearing on plaintiff's DIB application. Doc. 17-2 at 11-25, R. 10-24. On September 27, 2019, the Appeals Council denied plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. Doc. 17-2 at 3-6, R. 2-5; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, plaintiff asks the court to reverse the Commissioner's decision and award benefits or, in the alternative, to remand this cause to the Commissioner for further proceedings. Docs. 1 at 1-2; 15 at 18. This case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 10, 11. Based on the court's review of the parties' submissions, the relevant law, and the record as a whole, the Commissioner's decision will be reversed and remanded for further proceedings.

## II.    Standard of Review

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238–1239. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242–1243. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id.* at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## III.    Administrative Proceedings

Plaintiff was 25 years old at the time she filed her application for DIB and was 30 at the time of the ALJ's decision. *See* Docs. 17-2 at 11, R. 10; 17-3 at 40, R. 131. Plaintiff is a resident of Fort Mitchell, Alabama, and lives with her husband and son. *See* Docs. 17-2 at 2, R. 1; 17-3 at 42, 47-48, R. 133, 138-39.

Plaintiff claims that her ability to work is limited by Arnold-Chiari Malformation type 1 ("Chiari 1 malformation"), memory loss, depression, mood swings, brain swelling,

loss of words, fatigue, numbness, nausea, and insomnia. Doc. 17-4 at 17-8, R. 183-84.[5]

Plaintiff previously worked as an account representative and debt collector, credit card

account manager, financial crime specialist, office tax supervisor, payroll and bookkeeping

specialist, collections accountant, certified travel agent, and registered tax preparer. Doc.

17-7 at 30, R. 313.

Following the administrative hearing, the ALJ found at step one of the five-step

process that plaintiff had not engaged in substantial gainful activity "during the period from

her alleged onset date of October 1, 2013 through her date last insured of June 30, 2018[.]"

Doc. 17-2 at 16, R. 15.[6] At step two, the ALJ found that plaintiff suffered from the

following severe impairments: "Chiari 1 malformation, history of substance abuse

disorder[.]" *Id.* At step three, the ALJ found that plaintiff "did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed

impairments[.]" *Id.* Next, the ALJ articulated plaintiff's RFC as follows:

> the claimant had the residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) except the individual is restricted from being
> around unprotected elevations and near dangerous moving machinery; she is
> limited to work that needs little or no judgment to do simple duties that can
> be learned on the job in up to a month, meaning unskilled work; the
> individual is limited to jobs having few changes in the workplace and only
> occasional simple decision making; she is able to perform work related
> mental activities, that is, understand, remember and carry out instructions,

---

[5] Plaintiff's disability determination explanation lists "lost of words" under allegations of
impairments, which the court has interpreted as "loss of words" based on other documents in the
record. *See* Docs. 17-2 at 21, R. 20; 17-4 at 24, R. 190; 17-13 at 27, R. 830.

[6] During the administrative hearing, the ALJ noted that plaintiff's first eligible date of disability
would be October 31, 2013, due to a prior ALJ decision denying plaintiff's claim of disability
dated October 30, 2013. Doc. 17-3 at 45-46, R. 136-37. *See* Doc. 17-4 at 2-12, R. 168-78 (adverse
decision issued by ALJ John M. Dowling on October 30, 2013).

use judgment in making work-related decisions; respond appropriately to
supervision, co-workers, and work situations; and accommodate changes in
a routine work setting.

*Id.* at 17, R. 16. At step four, the ALJ determined that plaintiff "was unable to perform any

past relevant work[.]" *Id.* at 23, R. 22. At step five, based on the plaintiff's age, education,

work experience, RFC, and the testimony of the VE, the ALJ found that "there were jobs

that existed in significant numbers in the national economy that the claimant could have

performed[.]" *Id.* at 23-24, R. 22-23. Accordingly, the ALJ determined that plaintiff "was

not under a disability . . . at any time from October 1, 2013, the alleged onset date, through

June 30, 2018, the date last insured[.]" *Id.* at 24, R. 23.

## IV.    Issues on Appeal

On appeal, plaintiff argues that the ALJ erred by (1) finding that plaintiff had no

severe mental impairments, (2) failing to weigh the medical evidence and to develop the

record for the *pro se* claimant fully and fairly, (3) failing to evaluate plaintiff's subjective

allegations properly, and (4) failing to consider a vocational evaluation.

## V.     Discussion

1.    Mental Impairments

Plaintiff argues that the ALJ improperly excluded her alleged mental impairments

at step two because those impairments—depression, anxiety, mood swings, memory loss,

nervousness, paranoia, difficulty getting along with others, and problems with

comprehension—affect her ability to perform basic work activities as defined under 20

C.F.R. § 404.1522(b)(3)-(6). *See* Doc. 15 at 3-4. Plaintiff asserts that her testimony and he

record medical evidence raised a colorable claim of mental impairment and that the ALJ failed to apply the "special technique" for examining whether plaintiff had a medically determinable mental impairment, as required by the regulations. *Id.* at 5-6. Plaintiff also maintains that 42 U.S.C. § 421(h) requires the ALJ to request an evaluation by a qualified psychiatrist or psychologist to assess the severity of her mental impairments. *Id.* at 6.

The Commissioner responds that Plaintiff did not present a colorable claim of a medically determinable impairment before her date last insured and that the medical record evidence does not support the existence of a mental impairment. *See* Doc. 16 at 5-8. Further, the Commissioner argues that, even if plaintiff presented a colorable claim, the ALJ's failure to apply the special technique for mental impairments was harmless because the ALJ considered plaintiff's mental abilities throughout the five-step process and included extensive mental limitations in the RFC finding. *Id.* at 8.

When a social security claimant presents "a colorable claim of mental impairment, the social security regulations require the ALJ to complete a [Psychiatric Review Technique Form ("PRTF")] and append it to the decision, or incorporate its mode of analysis into its findings and conclusions" and "[f]ailure to do so requires remand." *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (citing *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2000); *Stambaugh v. Sullivan*, 929 F.2d 292, 296 (7th Cir. 1991); *Hill v. Sullivan*, 924 F.2d 972, 975 (10th Cir. 1991); *Montgomery v. Shalala*, 30 F.3d 98, 100 (8th Cir. 1994)). Under the relevant regulations, the "special technique" called for by the PRTF requires the ALJ to assess plaintiff's alleged mental impairment in the following

8

four broad functional areas (known as the "Paragraph B" criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3).[7] Those four functional areas must be rated on five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. 404.1520a(c)(4). Where the ALJ does not make a specific finding regarding whether a social security claimant's mental impairment claim is colorable, it may be inferred that the allegation is at least colorable where the ALJ analyzes and discusses evidence of mental impairment(s). *See Mills v. Comm'r of Soc. Sec.*, 659 F. App'x 541, 542 (11th Cir. 2016) (citing *Richardson v. United States*, 468 U.S. 317, 326 n.6 (1984)); *see also Reynolds v. Comm'r of Soc. Sec.*, 457 F. App'x 850, 852 (11th Cir. 2012) (in the context of determining RFC, an ALJ must complete the PTRF whenever a social security claimant alleges mental disability).

As the Commissioner argues, the ALJ did not apply the special technique to assess plaintiff's mental impairment either by completing the PRTF or by incorporating the technique's mode of analysis into her findings and conclusions. The ALJ heard testimony from plaintiff that, despite the fact that she did not receive mental health treatment during her alleged disability period, she suffered from anxiety and depression, she had a history of mental health treatment as a child, and she had received a referral to a psychiatrist. *See* Doc. 17-3 at 58-59, R. 149-50. The report of the state agency medical consultant, appended

---

[7] Prior to January 16, 2017, the four functional areas consisted of activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. 20 C.F.R. Part 4, subpt. P, Appendix 1 (2016).

to plaintiff's initial disability determination explanation, examined plaintiff's allegations of mental impairment and conducted the PRTF assessment. *See* Doc. 17-4 at 23-24, R. 189-90. The ALJ's decision shows that the ALJ clearly analyzed and discussed evidence of plaintiff's mental impairment. The ALJ found that plaintiff had memory and concentration problems (Doc. 17-2 at 19, R. 18). The ALJ also examined medical records from Dr. Thomas A. Staner, which reflected that plaintiff reported anxiety, nervousness, and memory loss, among other symptoms, in March 2017, and from Dr. James Robinson, who noted that plaintiff reported difficulty with memory in July 2017. *Id.* at 21, R. 20. The ALJ also examined the report of Dr. Scott Stewart, who noted in October 2016 that plaintiff reported bad memory problems and vegetative signs of depression. *Id.* at 20, R. 19. Dr. Stewart offered the opinion that plaintiff's presentation was "vague, evasive, and inconsistent," that "[s]he did not appear motivated to present her problems and abilities in an accurate manner," and that no valid diagnosis could be formulated because the information received during the evaluation was unreliable. *Id.* The ALJ also reviewed a third-party function report, which indicated that plaintiff could not go out alone because of memory problems and that depression, paranoia, and isolation affected her ability to engage in her hobbies and interact with others. *See id.* at 23, R. 22; Doc. 17-7 at 25-27, R. 308-10. The ALJ analyzed Dr. Stewart's opinion, as well, giving it "some weight,"[8] and also reviewed the third-party function report, assigning it "little weight." Doc. 17-2 at 22-

---

[8] Based on the content of the ALJ's statement and her reference to exhibit B9F, which is the consultative psychological report produced by Dr. Scott Stewart, the court understands the ALJ's statement according "some weight to the opinion of Dr. Lewis the consultative psychologist" to refer to Dr. Stewart's report. Docs. 17-2 at 22, R. 21; 17-10 at 63-65, R. 611-13 (Exhibit No. B9F).

23, R. 21-22. The ALJ made no explicit finding regarding whether plaintiff's mental impairment claim was colorable.

The court finds that, because the ALJ discussed and analyzed evidence of plaintiff's alleged mental impairment, plaintiff's allegation was at least colorable. Under such circumstances, the regulations require the ALJ to apply the special technique outlined in 20 C.F.R. 404.1520a(c), and to complete and append the PRTF to her decision or incorporate the mode of analysis into her findings and conclusions. In the instant case, the ALJ failed to apply the special technique to assess plaintiff's mental impairments and, therefore, the Commissioner's decision is due for remand on this basis. The ALJ did not err in failing to order a consultative exam by a qualified psychologist or psychiatrist.[9]

2.    Medical Evidence

Plaintiff argues that the ALJ improperly failed to weigh the medical opinions of treating physicians, failed to articulate good cause for not giving controlling weight to the opinions of those physicians, failed to articulate the weight she assigned to various medical opinions, and failed to develop the record regarding plaintiff's physical residual functional capacity sufficiently. Doc. 15 at 10-12. In response, the Commissioner contends that the ALJ's decision regarding plaintiff's physical impairments was supported by substantial

---

[9] Plaintiff's reliance on *McCall v. Bowen*, 846 F. 2d 1317, 1320 (11th Cir. 1988), intepreting 42 U.S.C. § 421(h) as requiring the ALJ to order a consultative examination by a qualified psychiatrist or psychologist before issuing a decision, is misplaced. The plain language of 42 U.S.C. § 421(h) makes it clear that the section applies to *initial determinations* and ALJ decisions or final decisions by the Commissioner. *See Sneed v. Barnhart*, 214 F. App'x 883, 886 (11th Cir. 2006) (citing *Plummer v. Apfel*, 186 F.3d 422, 423 (3d Cir. 1999)); *Fernandez v. Saul*, 2020 U.S. Dist. LEXIS 105288 at **11-12 (M.D. Ala. June 16, 2020).

evidence, that the record evidence cited by plaintiff does not include medical opinions that the ALJ was required to weigh, and that, in any case, such evidence supports the ALJ's decision.

Medical opinions, as defined by the regulations, "are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. 404.1527(a)(1). Medical records which contain only general physical information or referrals, without judgments about the nature and severity of impairments or a claimant's ability to work, do not qualify as medical opinions. *See Martinez v. Acting Comm'r of Soc. Sec.*, 660 F. App'x 787, 793 (11th Cir. 2016); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); 20 C.F.R. § 404.1527(a)(1).

An ALJ must state with particularity the weight she assigns to different medical opinions and the reasons supporting that assignment of weight. *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). Failure to do this is reversible error. *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986). As this court has explained:

> Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.

*Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of a treating physician constitutes reversible error).

*Rudolph v. Berryhill*, 2018 U.S. Dist. LEXIS 51177, at **13-14 (M.D. Ala. Mar 28, 2018) (quoting *Albery v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 91829, at *7 (M.D. Fla. June 7, 2012), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 91832 (M.D. Fla. July 3, 2012), and citing *Winschel*, 631 F.3d at 1179).

Further, the opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d at 1440). If the ALJ chooses to disregard the opinion of a treating physician, she must "clearly articulate" the reasons for doing so. *Id.*; *see also Winschel*, 631 F.3d at 1179; 20 C.F.R. § 404.1527(c)(2) ("good reasons" must always be given in the decision for the weight given to a treating source's medical opinion). "[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Failure to articulate clearly the reasons for giving less weight to a treating

physician's opinion is reversible error. *See Lewis*, 125 F.3d at 1440. Multiple factors must go into the ALJ's weighing of a medical opinion:

> [T]he Social Security regulations command that the ALJ consider (1) the examining relationship; (2) the treatment relationship, including the length and nature of the treatment relationship; (3) whether the medical opinion is amply supported by relevant evidence; (4) whether an opinion is consistent with the record as a whole; and (5) the doctor's specialization. Non-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence.

*Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019) (citing *Sharfarz*, 825 F.2d at 280; 20 C.F.R. § 404.1527(c)).

Plaintiff submits that medical record evidence from Ronald Moon, D.O.; Bill Berryman, M.D.; Hassan Fathallah-Shaykh, M.D.; and Sameera Davuluri, M.D., were medical opinions which the ALJ failed to consider properly or to assign a particular weight. *See* Doc. 15 at 8-10. The court summarizes these in turn.

Records from Dr. Moon, dated from November 19, 2013 to July 22, 2014, include a medical history form, pain diagram, evaluations, and results from imaging procedures, but they largely consist of clinic follow-up notes and test results. *See* Docs. 17-11 at 2-65, R. 625-88; 17-12 at 2-16, R. 689-704. Dr. Moon's initial evaluation form notes plaintiff's reported symptoms (including pain, stiffness, and discomfort in her low back, neck, upper back, head, and her legs and feet, numbness and tingling, headaches, weakness), as well as a range of reproducible symptoms (demonstrated with active/passive range of motion exercises and provocative testing); a number of diagnostic impressions (such as degenerative disc disease, chronic recurrent headaches, and pain/paresthesias in plaintiff's

extremities); and a treatment plan. Doc. 17-12 at 6-13, R. 693-700. Dr. Moon's clinic follow-up notes, which span the course of nine months, include a review of systems; results of a physical exam; recording of neurological and musculoskeletal conditions, including range of motion, stability, and strength; myofascial conditions; treatment notes; diagnostic impressions; and treatment plans and recommendations. The ALJ did not assign a weight to records from Dr. Moon in her decision.

Records from Dr. Berryman, dated from August 3, 2016 to June 12, 2017, consist of clinical encounter summaries, imaging orders, and lab results. *See* Docs. 17-9 at 81-90, R. 540-49; 17-14 at 6-66, R. 839-99; Doc. 17-15 at 7-31, R. 906-30. Dr. Berryman's clinical encounter summaries include plaintiff's vital readings, results of recent tests—for instance, drug screenings, or electrocardiograms; routine screenings such as the Screener and Opioid Assessment for Patients with Pain (SOAPP) and Beck Depression Inventory; a review of medications, allergies, medical and social history, chief complaint(s); a review of systems; history of present illnesses; physical exam notes; document review; review of imaging results; assessment/plan notes; and discussion notes. Notes from Dr. Berryman's first visit with plaintiff include a review of her symptoms and medical history; assessment of the severity of her physical symptoms and pain—e.g., the range of flexion and extension in her cervical and lumbar spine; evaluation of her pain level; and an initial treatment plan together with a recommendation to have surgery. *See* Doc. 17-9 at 81-90, R. 540-49. The ALJ did not assign a weight to records from Dr. Berryman in her decision.

Records from Dr. Fathallah-Shaykh, dated from October 31, 2016 to February 24, 2017, consist of clinic notes and radiology exam notes. *See* Docs. 17-10 at 67-76, R. 615-24; 17-12 at 95-97, R. 782-84. The records also include an application for disability access parking privileges to the Alabama Department of Revenue signed by Dr. Fathallah-Shaykh. Doc. 17-7 at 71, R. 353. Dr. Fathallah-Shaykh's clinic notes, from a single visit on October 31, 2016, include an initial neurological evaluation, a review of plaintiff's symptoms, medical history, review of systems, medications, social history, physical examination, and test results. *See* Doc. 17-10 at 67-76, R. 615-24. The clinic notes reflect that plaintiff reported pain in the lower spine radiating up, throbbing headaches, nausea, short-term memory loss, and difficulty with daily routine, as well as a diagnosis of Chiari 1 malformation and a possible small cholesterol granuloma in the right petrous apex, chronic pain, including headaches, and orders for several tests and a follow-up appointment. *See id.* The radiology exam notes, ordered by Dr. Fathallah-Shaykh but interpreted by various other doctors, report objective medical information and do not include judgments about the nature or severity of plaintiff's symptoms. *See* Doc. 17-12 at 95-97, R. 782-84. The ALJ summarized Dr. Fathallah-Shaykh's notes in her decision but did not assign a weight to them.

Records from Dr. Davuluri, dated from September 23, 2016 to May 10, 2017, consist of clinic notes, radiology exam notes, lab test results, and a letter—addressed generally "To Whom It May Concern" and dated February 27, 2017. *See* Docs. 17-10 at 15-22, R. 563-70; 17-12 at 111-117, R. 798-804;  17-14 at 67, R. 900; 17-15 at 2, R. 901.

16

Dr. Davuluri's clinic notes, from a single visit on September 23, 2016, include a review of plaintiff's symptoms, medical history, review of systems, medications, social history, physical examination, and a diagnosis of Chiari 1 malformation and dysuria as well as a referral to neurology. *See* Doc. 17-10 at 12-22, R. 563-70. The radiology exam notes, ordered by Dr. Davuluri but interpreted by Dr. Mark Langston, report objective medical findings related to plaintiff's cervical spine, pelvis, sacrum, and coccyx. *See* Docs. 17-12 at 111-14, R. 798-801; 17-15 at 1-2, R. 900-01. Dr. Davuluri's letter states that plaintiff is a patient of UAB Family Medicine, details plaintiff's medical problems, and lists the various medical specialties—neurology, neurosurgery, pain medicine, and physical therapy—under which plaintiff has received treatment. *See id.* at 115, R. 802. The ALJ did not assign a weight to Dr. Davuluri's records in her decision.

A treating source is "an acceptable medical source who provides . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [a claimant]." 20 C.F.R. § 404.1527(a)(2). An ongoing treatment relationship is one in which "the medical evidence establishes that [a claimant] see[s], or ha[s] seen, the course with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [a claimant's] medical condition(s)." *Id*. The records summarized above suggest that the ALJ should have considered Dr. Moon and Dr. Berryman as treating sources based on their ongoing treatment relationship with plaintiff. Further, the content of the records, which include judgments about the nature and severity of plaintiff's impairments, symptoms, diagnoses, and treatments, indicate that those judgments should

be considered medical opinions for which the ALJ must assign a weight and articulate the reasons supporting assignment of that weight. The ALJ failed to consider and to assign weight to the medical opinions of Dr. Moon and Dr. Berryman as treating source opinions, and the failure to do so constitutes reversible error.

3.      Plaintiff's Subjective Allegations

Plaintiff argues that the ALJ failed to consider plaintiff's subjective statements regarding her impairments properly in making her decision. Plaintiff maintains that the ALJ's conclusion that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record evidence was directly contradicted by documentation that plaintiff had begun seeing a psychiatrist, and prior records that document symptoms of depression and anxiety. Doc. 15 at 14-15.

The Commissioner argues that substantial evidence in the form of a consultative examination report, plaintiff's possession of a driver's license and ability to drive herself to the hearing, her ability to take care of her child while her husband worked 12 hours per day, her community college attendance, her lack of mental health treatment, her testimony that she had not taken any medication in over one year, and the largely unremarkable examinations and diagnostic imaging in the record evidence supported the ALJ's determination that plaintiff's subjective complaints were inconsistent with the objective medical evidence and other evidence. Doc. 16 at 13-14.

"Credibility determinations are the province of the ALJ and we will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v.*

*Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Moore*, 405 F.3d at 1212;

*Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)) (internal citations omitted). As the

Eleventh Circuit has explained:

> Although this circuit does not require an explicit finding as to credibility,
> . . . the implication must be obvious to the reviewing court. The credibility
> determination does not need to cite particular phrases or formulations but it
> cannot merely be a broad rejection which is not enough to enable [the district
> court or this Court] to conclude that [the ALJ] considered [the claimant's]
> medical condition as a whole.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and

citations omitted). The ALJ's detailed analysis of plaintiff's credibility far surpasses this

minimum standard.

As discussed in section 1 above, the ALJ considered plaintiff's testimony and

circumstances, including those cited by the Commissioner, as well as numerous medical

records in making a determination concerning plaintiff's testimony regarding her

symptoms of mental illness. The ALJ considered findings (1) from Dr. Fathallah-Shaykh,

which noted that plaintiff retained significant strength and there was no electrophysiologic

evidence of right lumbosacral radiculopathy or large fiber peripheral neuropathy to explain

plaintiff's symptoms; (2) from Dr. Staner, which noted a normal neurological examination

and a motor examination of 5/5; (3) from Dr. Vaphiades, which included a brain MRI that

showed an overall stable exam, two lumbar spine MRIs that showed no pathologic findings,

and a brain MRI that showed no acute abnormality; and (4) from Dr. Robinson, which

noted independent ambulation. *See* Doc. 17-2 at 19-22, R. 18-21. The ALJ found that

plaintiff was not as limited as she alleged, and that her statements concerning the intensity,

persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *See id.* at 19, 22 R. 18, 21. Substantial evidence supports the ALJ's findings regarding the credibility of plaintiff's testimony.

4.    Vocational Evaluation

Plaintiff argues that the ALJ erred in failing to mention a vocational evaluation taken on May 20, 2018, or to indicate whether she gave it any weight because, although a vocational specialist's opinions on a claimant's ability to work are not binding on the ALJ, they still must be weighed along with all other evidence. Doc. 15 at 17-18. The Commissioner maintains that the vocational evaluation does not warrant remand of this case because the evaluator was not a medical source, because statements from non-acceptable medical sources are not medical opinions, and because such statements are not entitled to any special significance or consideration.

The vocational evaluation, conducted by Carolyn Goode, an "ARDS ITE"[10] counselor with Easter Seals West in Selma, Alabama, noted that plaintiff had significant difficulty with her vision during the evaluation. Doc. 17-8 at 41, R. 416. The evaluation included the Wide Range Achievement Test-IV ("WRAT-4"); CareerScope, a test of visual-motor skills; NEO-4; and Behavior Rating Inventory of Executive Functioning (BRIEF-A). The evaluation provides no indication that Goode is a medical source. Goode found that the results of the WRAT-4 were questionable because plaintiff experienced

---

[10] The court understands these abbreviations as follows: Alabama Department of Rehabilitation Services ("ADRS"); Independence Through Employment ("ITE").

headaches and blurred vision during the test, that plaintiff was unable to complete the CareerScope, that the results of her visual-motor skills test were far lower than otherwise might be expected due to her vision problems and headaches, that it was doubtful that plaintiff's behavioral and cognitive functioning were as seriously compromised as the results of her BRIEF-A test would indicate, and that the NEO-4 test indicated that plaintiff had average agreeableness, extraversion, and conscientiousness, and low-range openness. *See id.* at 42-46, R. 417-21. The evaluation noted that a functional capacity evaluation of plaintiff's physical capacity was not performed, but that available reports and general observation were reviewed to analyze the impact of her stated disabilities.

As a vocational counselor, Goode is a nonmedical source as defined by the social security regulations, and the report is considered evidence from a nonmedical source. *See* 20 C.F.R. §§ 404.1502(e); 404.1513(a). "Although the ALJ should consider evidence from non-medical sources, the ALJ is not required to assign the evidence any particular weight." *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 782-83 (11th Cir. 2016) (citing SSR 06-03p, 2006 SSR LEXIS 5 at *13 (Aug. 9, 2006)). "Instead, whether and how much weight the ALJ should give this kind of evidence depends on the particular facts of the case and a variety of factors, including whether the opinion is consistent with other evidence in the record." *Id.* at 783 (citing 2006 SSR LEXIS 5 at *14). Additionally, there is no rigid requirement for the ALJ to refer to every piece of evidence in her decision so long as the ALJ's decision is not a broad rejection that is insufficient to enable the court to conclude that the claimant's medical condition was considered as a whole. *See Dyer*, 395 F.3d at

1211. The ALJ's decision, which details plaintiff's testimony and the medical records, does not have the hallmarks of a broad rejection which would not enable the court to conclude that plaintiff's medical condition was considered as a whole. Further, as noted in the evaluation, the assessment of plaintiff's limitation was based on a review of reports and not a physical assessment. Thus, the vocational evaluation at issue is an insufficient basis for remand.

## VI.    Conclusion and Order

Accordingly, for the reasons discussed, the decision of the Commissioner will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) so that the Commissioner can conduct additional proceedings consistent with this opinion. The court does not reach plaintiff's arguments that are not expressly discussed herein. The court expects that the Commissioner will consider plaintiff's arguments as to those issues on remand as well, and will develop the record as is necessary in areas not expressly considered in this opinion.

Done, on this the 30th day of September, 2020.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge